UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISOKE ROBINSON,   Case No. 23-12676

    Plaintiff,

v.   F. Kay Behm
U.S. District Judge

JAMES WHITE, *et al.*,

    Defendants.
_____ /

**OPINION AND ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT AND JURY DEMAND (ECF No. 22)**

The matter is before the court on Plaintiff's Motion for Leave to File Her First Amended Complaint and Jury Demand ("Plaintiff's Motion") (ECF No. 22). Plaintiff Isoke[1] Robinson ("Robinson") filed this lawsuit in October 2023 alleging violations of her constitutional rights and resulting harms which allegedly occurred as a result of the Detroit Police Department's ("DPD") seizure of her vehicle and belongings while investigating a shooting. *See* Complaint, ECF No. 1-1. The original Complaint also named Defendant Dion Corbin ("Corbin") and nine other

---

[1] Plaintiff notes that Ms. Robinson's name was misspelled in earlier filings as "Osoke" Robinson; the correct spelling is used in this order. *See* ECF No. 22, PageID.111.

1

unknown DPD officers. *Id.* The court held a hearing on the motion for leave to amend via videoconference on October 21, 2024. For the reasons set out below, the court **GRANTS** Plaintiff Leave to file an amended complaint and jury demand within 14 days of entry of this Order.

I.     FACTUAL BACKGROUND

This case was removed to federal court on October 23, 2023, and was delayed for much of the subsequent six months; after Robinson's first attorney withdrew due to a "breakdown of the attorney/client relationship" and "failure of communication" between attorney and client, Robinson at last obtained new counsel in March 2024. *See* ECF No. 7, 11, 16. Much of the delay before Plaintiff's current counsel took over appears to be attributable to the alleged breakdown of the prior attorney client relationship and the period when Robinson was unrepresented by counsel.

On June 3, 2024, this court issued its first case management order, which set an initial disclosures deadline of June 20, 2024, and a deadline to amend the pleadings of July 8, 2024. ECF No. 20. On September 4, 2024, after the deadline for amendments had passed, Robinson moved for leave to file her first amended complaint. ECF No.

22. Robinson alleges that the reason for the delay in filing her amended complaint was because she sought to add the proper defendants, i.e. the other Detroit police officers involved in the incident at issue other than Corbin, and it took some time to obtain that information.  ECF No. 22, PageID.112.  In her motion, Robinson alleges that no other officers were identified by name in Corbin's initial disclosures in June 2024, and therefore it was not until Corbin's deposition in August 2024, and the transcript of that deposition provided to Robinson on August 30, 2024, that Plaintiff had sufficient information to amend their complaint with the proper parties.  ECF No. 22, PageID.113.  In her Reply, she further asserts that she did not have access to documents produced in response to subpoenas until July 8.  ECF No. 26, PageID.297.  Plaintiff filed her Motion to Amend her Complaint on September 4, 2024.  Plaintiff's Motion, ECF No. 22.  Defendant Corbin responded to Robinson's Motion on September 17, 2024, and she filed a Reply on September 24, 2024.  *See* Defendant's Response, ECF No. 24; Plaintiff's Reply, ECF No. 26.

Plaintiff's "superseding" Amended Complaint, attached to their Reply, proposes to name Corbin, Patrick Mifsud ("Mifsud"), Seamus Waderlow ("Waderlow"), Kyle Arellea ("Arellea"), and the City of Detroit ("Detroit") as Defendants.  ECF No. 26-6 ("Amended Complaint").  The

3

Amended Complaint alleges, essentially, that Robinson's vehicle, a white Dodge Charger, was identified as being similar to a car used in a nearby shooting. *See id.* As a result, DPD officers, including Corbin, Arellea, and Waderlow, detained Robinson while in her driveway and/or garage in order to search and seize her vehicle. Mifsud aided Corbin in identifying Robinson's vehicle as the vehicle likely used in the shooting using Detroit's "Green Light District" cameras and the FLOCK license plate reading system. *Id.* at PageID.317. However, the Amended Complaint alleges that there was in fact no link between Robinson, her car, and the shooting, and alleges a violation of her Fourth Amendment rights against unreasonable search and/or seizure, as well as state law negligence claims against Mifsud and Corbin. *See id.*

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 15(a) provides that for amendments to the pleadings before trial, "[t]he court should freely give leave when justice so requires." Generally, courts will only deny a motion to amend "where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Miller v. Campion*

4

*Enters., Inc.*, 346 F.3d 660, 690 (6th Cir. 2003) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2003) (internal quotation marks omitted)). However, a party's ability to freely amend its complaint may be limited by a scheduling order if it sets a deadline for amended pleadings, and Fed. R. Civ. P. 16(b)(4) provides that a scheduling order may only be modified for "good cause and with the judge's consent." When determining whether a party has established good cause courts consider whether the moving party was diligent in meeting the deadlines set forth in the scheduling order and whether the non-moving party will be prejudiced by granting the motion. *Leary v. Daeschner*, 349 F.3d 888, 907–909 (6th Cir. 2003).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)).

### III. ANALYSIS

Plaintiff asserts that they have provided proof of due diligence and that there is therefore good cause to amend their complaint beyond the time set forth in the scheduling order. Defendant, however, asserts that Robinson's proposed amendment will cause undue delay, undue

5

prejudice to Corbin, and is futile. For the reasons set out below, the court declines to adopt any of Defendant's arguments, and grants Plaintiff leave to amend.

### A. Whether there is good cause to allow late amendment

When determining whether a party has established good cause courts consider (1) whether the moving party was diligent in meeting the deadlines set forth in the scheduling order and (2) whether the non-moving party will be prejudiced by granting the motion. *See Leary v. Daeschner*, 349 F.3d 888, 907–909 (6th Cir. 2003).

Here, the court does not find undue prejudice to the opposing party other than the ordinary prejudice of having to defend from a lawsuit. From Defendant's perspective, this motion sought (at the time it was filed) a roughly 60-day extension to the scheduling order. Defendant is likely correct that the addition of new defendants may add time to this case, but Defendant was on notice that any or all officers involved in the incident alleged in Robinson's original complaint would be brought in as defendants. *See* ECF No. 1-1. It is not entirely clear whether Corbin has standing to assert prejudice on behalf of the proposed new defendants, *see Phillips v. Hinds*, No. 1:19-cv-331, 2020 U.S. Dist. LEXIS 258376, at *3 (W.D. Mich. Oct. 19, 2020) (citing cases).

6

But as far as any new individual defendants are concerned, given that discovery in this case only began in earnest in June 2024, and this motion was filed less than 60 days after the beginning of discovery, the court finds it is not unreasonable to allow amendment to add those parties at this (relatively) early stage of the litigation.

Furthermore, the documents provided by Plaintiff in her motion describing the interactions between the parties since the first scheduling order in June 2024 indicate that there has not been significant delay since Robinson obtained her current counsel, and Plaintiff's counsel has been reasonably diligent in meeting the deadlines set forth in the scheduling order.  *See* ECF 22-6.  The timeline alleged by Plaintiff – that Plaintiff received documents which were necessary to draft this amendment from Defendant in early July, sought to depose Corbin in July but instead did so in August because Corbin was unavailable in July, and days after receiving the transcript of that deposition filed this Motion at the beginning of September – does not show an unreasonable lack of diligence when measured against the first case management order being entered, and discovery beginning, less than 60 days ago in June 2024.

7

### B. Whether there is undue delay, undue prejudice, or futility of amendment

Defendant first asserts that this amendment will prejudice Corbin and is futile because Corbin (and any other individual officer) is entitled to qualified immunity. *See* ECF No. 24, PageID.279. That could end up being the case. But as Corbin's assertion that he was about to file a Motion for Summary Judgment indicates (ECF No. 24, PageID.278), Robinson's existing Fourth Amendment claim had already raised the issue of qualified immunity by asserting constitutional violations by Corbin. *See* ECF No. 1-1, PageID.15. It was foreseeable that, once Defendants removed this case to federal court, Robinson would present (as she does now) additional facts in anticipation of the need to survive a dispositive motion regarding qualified immunity. To that end, Robinson seeks to amend her Complaint to include facts regarding how, precisely, DPD identified her car as relevant to their investigation, including the use of the FLOCK license-plate reader system and "Green Light District" cameras, facts which are critical to the probable cause analysis. *See* ECF No. 26-6. She also seeks to add factual allegations

regarding where the incident took place, which officers were involved, and adds claims for municipal liability.[2] *Id.*

Defendant's first argument runs roughly like this: there was ample evidence to support probable cause to search and seize Robinson's vehicle (ECF No. 24, PageID.281), and therefore the officers involved are entitled to qualified immunity and no claim can lie against the proposed Defendant City of Detroit. *See Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (one step of the qualified immunity analysis is whether there is a constitutional violation at all); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (municipal liability requires underlying constitutional violation). This court is not convinced. In the court's view, Robinson alleges enough additional facts in her proposed amended complaint that, viewed in the light most favorable to her, raise an issue of law of whether the named officers had probable cause to search or seize her vehicle while she was in her driveway. Under Plaintiff's amended facts, Plaintiff alleges that the only evidence officers used to determine they had probable case was that Robinson's car looks

---

[2] Defendant and Plaintiff allege divergent facts regarding the harm of the incident itself (such as the length of time in handcuffs), but that disagreement has little to do with whether Robinson can plausibly allege a violation of her constitutional rights as a result of the search and/or seizure. *See* Defendant's Response, ECF No. 24, PageID.282.

9

similar to the car used in the shooting, and that her car was spotted by the FLOCK license-plate reader system two miles from the shooting's location, 15 minutes *before* the shooting occurred. ECF No. 26, PageID.299 (emphasis added). The location where the system allegedly spotted her car? Point-three miles from her home. ECF No. 26-6, PageID.318. Plaintiff alleges that in the general area of Plaintiff's home, there are currently 241 2013–2016 Dodge Chargers, at least some of which, the court presumes at this stage, are also painted white. *Id.* Plaintiff has also alleged that the FLOCK license-plate reader system does not provide comprehensive coverage of the City of Detroit. *See id.* at 317. In a given area, then, there might be many cars at any given time, but a FLOCK camera will only capture some (at this point unknown) percentage of those vehicles. In other words, this patchwork surveillance means that the fact that a single matching result returned by a FLOCK system search does not provide any proof that it was the *only* matching car actually in that area, and provides no information about cars which may have been in nearby, unmonitored streets or intersections at that same time.

     With this background about the fallibilities of the FLOCK system, in the court's view, there merely being a similar-looking car on the

roads in a given metropolitan area of Detroit would not be independently sufficient to establish probable cause. *Compare United States v. Donelson*, No. 2:22-cr-20133, 2023 U.S. Dist. LEXIS 28499, at *10 (W.D. Tenn. Feb. 21, 2023) (Flock alert license plate match, exact matching car, proximity to the relevant area, and elements of the physical description of suspect gave rise to reasonable suspicion), *with United States v. Thompson*, 591 F. App'x 652, 657 (10th Cir. 2014) (officer had reasonable suspicion to stop and probable cause to arrest when he arrested a man sitting alone in the driver's seat of a black Buick LaCrosse only moments after the same officer had actually seen a lone person with the same description driving a black Buick LaCrosse commit a traffic infraction); *see also* MY COUSIN VINNY (Twentieth Century Fox 1992) (examination of Mona Lisa Vito) (showing how easily a person could mistake a 1964 Buick Skylark for the 1963 Pontiac Tempest which had the same body length, height, width, weight, wheel base, wheel track, and was also available in metallic mint-green paint).

The opposite result would be odd indeed; the FLOCK system apparently permits Detroit police to input a vehicle description, and instantly pull up images of vehicles from all over the city. ECF No. 22-2, PageID.135 (Deposition of Dion Corbin). At the push of a few

11

buttons, investigating officers can sweep into their investigation every car that has passed by one of these cameras in the city in a specified time period – though it bears repeating, *not* necessarily every car that is actually in that area. The theory that Defendant implicitly asks this court to adopt is that any vehicle that the FLOCK camera system dubs the best result for a given input may be subject to search by police, and that no further investigation, verification, or check on that search is required (this theory also implicitly assumes a low-to-nil error rate by the FLOCK system). The court disagrees that that single FLOCK result "matching" a vehicle's appearance would be sufficient to establish probable cause; thus, Plaintiff's proposed amended complaint sufficiently alleges a lack of probable cause. Accordingly, permitting amendment to establish facts challenging whether police had probable cause in this case is not futile.

Alternatively, Robinson also alleges that her vehicle was within the curtilage of her home because it was in her garage, which, again viewed in the light most favorable to her, raise a separate issue of whether the charged officers needed a warrant to search her car, regardless of whether they had probable cause. *See* Plaintiff's Proposed Amended Complaint attached to Plaintiff's Reply, ECF No. 26-6,

12

PageID.331-32; *Collins v. Virginia*, 584 U.S. 586, 588 (2018); *United States v. May-Shaw*, 955 F.3d 563, 570 (6th Cir. 2020). Because the officers in this case did not have a warrant, amendment to properly plead a warrant requirement is similarly not futile. The court notes that because on either or both issues of law, Plaintiff has adequately alleged sufficient facts to establish a Fourth Amendment violation, her proposed claim against the City of Detroit requires no further analysis on this motion; the City's argument that her *Monell* claims are futile is without merit where the City only argued that such claims failed because there was no underlying constitutional violation.

    Defendant's second argument on qualified immunity roughly equates to: even if there was a constitutional violation here, the individual officers are entitled to qualified immunity for reasonable but mistaken judgments, and therefore this amended complaint would not survive a motion to dismiss as to those officers and is futile. *See* ECF No. 24, PageID.281, citing *Sova v. City of Mt. Pleasant*, 142 F.3d 898 (6th Cir. 1998). But that puts the cart before the horse; here, if Robinson eventually prevails on any of her Fourth Amendment claims because there was a constitutional violation, it is not a foregone conclusion that the officers are nonetheless entitled to qualified

13

immunity. *See, e.g.*, *Morgan v. Fairfield Cty.*, 903 F.3d 553, 564 (6th Cir. 2018) (addressing clearly established law as to warrantless searches on the curtilage of a home); *United States v. Kincaide*, 145 F.3d 771, 779 (6th Cir. 1998) (probable cause required to search vehicle without a warrant). It is plausible from the face of the complaint, for example, that officers proceeded immediately to searching Robinson's vehicle upon arriving at her home based only on the vehicle "match" provided by the FLOCK search result, and/or that her vehicle was within the curtilage of her home when it was searched. On the facts alleged and in the light most favorable to Robinson, she has fairly alleged constitutional violations that, if true, would violate clearly established law and the defendant officers would thus not be entitled to qualified immunity. Without the benefit of further development of these issues, the court declines to dismiss the proposed amendment as futile.

As to Robinson's proposed state law claims, Defendant asserts that amendment will be futile because a governmental employee has broad immunity from liability for alleged intentional torts under certain circumstances. *Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008); *see Ross v. Consumers Power Co.*, 363, 420 Mich. 567, 633–34 (1984); Mich.

14

Comp. Laws § 691.1407(2) (statutorily setting the standard for negligent torts). Governmental immunity is an affirmative defense that must be raised and established by the defendant.[3]

When a plaintiff alleges negligence, to avoid governmental immunity they must prove that the defendant claiming immunity a) was not acting or did not reasonably believe they were acting within the scope of their authority, b) was not engaged in the exercise or discharge of a governmental function, or c) the defendant's conduct "amounted to gross negligence that was the proximate cause of the injury or damage." *Odom*, 482 Mich. at 480; Mich. Comp. Laws § 691.1407(2). "Gross negligence" as used in the governmental immunity statute means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a); *Dubay v. Craze*, 327 F. Supp. 2d 779 (E.D. Mich. 2004).

Generally, affirmative defenses must be raised as a motion for summary judgment because the defendant bears the burden of proof and must present evidence to support the defense. *See, e.g., Jones v.*

---

[3] Originally, Plaintiff proposed to add claims for intentional torts. *See* ECF No. 22-4. However, Plaintiff has since proposed to replace those claims with only a negligence claim. *See* ECF No. 26-6. The court treats the intentional tort claims as abandoned, *see* ECF No. 26, PageID.301, and addresses only the proposed negligence claims.

15

*Bock*, 549 U.S. 199, 204 (2007) (noting that a defendant must plead and prove an affirmative defense). When, however, the allegations in the complaint establishes the facts necessary for the affirmative defense, a motion to dismiss raising the defense may be granted. *See Estate of Barney v. PNC Bank*, 714 F.3d 920, 926 (6th Cir. 2013). Because "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss[,]" the analysis of a 12(b)(6) motion to dismiss and a responsive pleading arguing futility of amendment of a complaint merge. *See Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (citation omitted). Therefore, if the proposed amended complaint here would establish all the facts of Defendant's proposed governmental immunity (even while viewing all facts in the light most favorable to the plaintiff), Robinson's motion to amend may be denied.

With that in mind, some of the elements of governmental immunity are met here; engaging in an investigation of a crime, for example, is a governmental function. *Tate v. City of Grand Rapids*, 256 Mich. App. 656, 661 (2003). State governmental immunity in Michigan is based on a policy of deferring to employees engaged in discretionary acts, which allows the employee to resolve problems without constant fear of legal repercussions. *Odom*, 482 Mich. at 476. Police officers

16

must use their judgment to determine whether there is reasonable suspicion to investigate or probable cause to arrest. *Id.* But the instant motion is a somewhat awkward vehicle to effectively dismiss Plaintiff's proposed state law claims because to do so would force this court to accept Defendant's version of events. Robinson has asserted that the officers' actions were so grossly negligent that they essentially could not have held a good-faith belief that he had probable cause to search her vehicle. ECF 26-6, PageID.325. In fact, she further alleges the officers involved had actual knowledge that they had no basis to arrest her or seize her vehicle and that the investigation was insufficient to provide probable cause to do so. *See id.* ("Defendant Arella can be overheard brainstorming justifications to arrest Ms. Robinson.") ("Defendant Waderlow explain[ed] that there is no basis for an arrest but state[d] that it is above his pay grade and he does not care."). Plaintiff also asserts that this was a pattern with this particular unit, and if true, the fact that this has happened more than once is another indication of gross negligence by the investigating officers (i.e. a substantial and reckless lack of concern for continuing constitutional violations). *Id.* at 316 ("Number nine do another half investigation?" "Yeah, it tends to happen."). At this stage the court can only consider whether the facts

17

as alleged by the Plaintiff and in the light most favorable to Plaintiff (as it would on a motion brought under Rule 12(b)(6)). Here, Plaintiff has alleged that the officers subjectively believed that there was no reason to arrest Plaintiff, that their investigation was insufficient to provide probable cause to search her vehicle, and that this deficient investigation was part of a pattern of repeat violations by at least some of the officers involved. Considered in totality, this disregard for plaintiff's constitutional rights would establish "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *See* Mich. Comp. Laws § 691.1407(8)(a). Alternatively, the statements Plaintiff alleges the officers made could also show that the officers involved could not have reasonably believed that they were acting within the scope of their authority. Thus the state law counts are not futile at this stage.[4]

Finally, Defendant also claims that the need to add additional officers to this case will cause undue delay. *See* ECF No. 24,

---

[4] To the extent that Defendant also appears to contest that Corbin can be liable at all because he was not the proximate cause of the search and/or arrest, *see* ECF No. 24, PageID.284, the court finds this argument undeveloped on this set of briefings. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

PageID.278.  The court also notes its own concern that the original complaint in this case was filed almost a year ago, and at least some of the delay in filing an amended complaint appears to be fairly attributable to Plaintiff.  Nonetheless, neither Defendant nor the new named defendants can plausibly claim surprise that Robinson seeks to add the very officers who were at the scene described in her original allegations – as she further indicated in her original complaint by including nine additional unnamed officers.  ECF 1-1, PageID.11.  This amendment to add these officers also comes, according to Plaintiff, after having received the materials necessary to identify them in early July 2024, and having been only able to depose Defendant Corbin in August 2024.  ECF No. 26, PageID.298.  Though the court anticipates this amendment will add time to the case, the delay, as indicated in Part III.A, is not an undue one.

## IV. CONCLUSION

The court therefore finds that there is good cause to permit Plaintiff's amendment to her complaint. The court also finds that Defendant will not be unduly prejudiced by granting the motion, the case will not be unduly delayed, and the amendment is not futile. The court therefore **GRANTS** Plaintiff's Motion for Leave to file an

19

amended complaint and jury demand (ECF No. 22) and **ORDERS** that Plaintiff must file their superseding proposed amended complaint (ECF No. 26-6) within 14 days of entry of this Order. No further amendments will be allowed. A new scheduling order will be issued extending the current case deadlines by four months. Plaintiff is reminded that in future filings, they must follow Local Rule 7(d)(2) regarding the required form of briefs.

It is further **ORDERED** that the docket and case caption be corrected to reflect the correct spelling of Plaintiff's name as "Isoke Robinson."

**SO ORDERED**.

Date: October 25, 2024              s/F. Kay Behm
                                    F. Kay Behm
                                    United States District Judge